**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MATTHEW J. BALLISTER, III,** | : | |
| | : | **Civil Action No. 15-7655 (ES)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **UNION CTY. PROSECUTOR'S** | : | |
| **HOMOCIDE TASK FORCE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

Plaintiff Matthew J. Ballister ("Plaintiff"), a pre-trial detainee confined at Union County Jail in Elizabeth, New Jersey at the time of filing, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint.   (D.E. No. 2).

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.[1]   For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

---

[1]  After he filed the Complaint in this matter, Plaintiff filed several lengthy letters and supplements. (*See* D.E. Nos. 3-8).   Based on these subsequent filings, the Court entered an order advising Plaintiff that if he has additional facts or claims he wishes to raise, he must file an amended

## I. BACKGROUND

In his 135-page Complaint, Plaintiff names the Union County Prosecutor's Homicide Task Force; Detective Sergeant Jorge Jimenez; Detective Robert Henderson; Detective William Fuentes; Detective Sofia Santos; Union County Prosecutor Scott Peterson; Township of Union Municipal Court Prosecutor Michael Henn; Township of Union Police Department; Police Officer Salvatore Valentino; Union Police Department S.W.A.T. team; Police Officer Christopher Donnelly; Police Officer Thomas Ronan; Police Officer Christopher Baird; Police Officer Daniel Mitchell; Police Officer Thomas Florio; Police Officer Peter Simon; Police Officer Daniel Teleposky; Police Officer Tim Ford; Union Police Detective Anthony Sickinger; and Union Police Detective Lieutenant Perez, as Defendants.

To the best the Court can determine, Plaintiff makes the following allegations against these Defendants.   Against Defendant Union County Prosecutor's Homicide Task Force, Plaintiff alleges that it employs the individuals who investigated the death of Plaintiff's girlfriend, April Wychoff, and was responsible for the actions of those individuals during the arrest and interrogation of Plaintiff.   (D.E. No. 1, Complaint ("Compl.") 8-9).   Plaintiff also makes similar allegations against the Union County Police Department and Emergency Response Team.   (*Id.* at 59-62, 71-76).   Against Defendants Jimenez and Henderson, Plaintiff alleges that they conspired to "bully, intimidate and coerce" friends and neighbors of Plaintiff and Ms. Wychoff.   (*Id.* at 11).   Specifically, they tried to convince Ms. Marlo Conklin to say that Plaintiff had murdered Ms. Wychoff.   (*Id.*).   Plaintiff further alleges that Defendant Jimenez illegally searched Plaintiff's

---

complaint which contains all issues.   (D.E. No. 9).   The Court further advised that if he elected not to file an amended complaint, the Court would consider only the facts and claims contained in the original Complaint.   (*Id.*).   Because Plaintiff did not file an amended complaint, the Court will screen only Plaintiff's original Complaint.   (D.E. No. 1).

2

home without a warrant on October 23, 2013.  (*Id.* at 12).  Plaintiff alleges that Defendant Jimenez conspired with the Union County Prosecutor's Homicide Task Force, Sofia Santos, Detective Fuentes, Detective Henderson and the Union County Prosecutor's Office to "slander, defame and destroy the character of [Plaintiff], to unlawfully and excessively charge him and slander and defame his character to the media."  (*Id.* at 13-14).  Plaintiff alleges that Defendant Jimenez conspired with the Union County Prosecutor's Office and the Homicide Task Force to "overcharge [him], falsely arrest [him], and charge [him] with multiples of the same crime."  (*Id.*). Plaintiff alleges that Defendant Jimenez conspired with Assistant Prosecutor Scott Peterson and Homicide Task Force Detective Sofia Santos and Detective William Fuentes to deny Plaintiff assistance of his counsel during "questioning."[2]  (*Id.* at 16).  Plaintiff states that he repeatedly requested counsel during questioning but was denied access.  (*Id.*).

Plaintiff alleges that Defendant Henderson conspired with Prosecutor Scott Peterson to lie to the grand jury in order to indict Plaintiff on murder charges.  (*Id.* at 19).  Plaintiff also alleges that Defendant Henderson conspired with Assistant Prosecutor Michael Henn of the Union County Municipal Court to falsely charge Plaintiff with nine additional charges stemming from the night of Ms. Wychoff's death.  (*Id.* at 21).  Plaintiff alleges that Defendants Henderson, Fuentes and Santos also conspired with the Union County Prosecutor's Office and the Homicide Task Force to "slander and defame and destroy" the character and reputation of Plaintiff.  (*Id.* at 25, 33, 41).

Plaintiff alleges that Defendant Fuentes improperly arrested Plaintiff on October 23, 2013 outside of his home without a warrant.  (*Id.* at 32).  Plaintiff also alleges that Defendant Santos

---

[2] Plaintiff uses the term "questioning", however, later in the Complaint, he states that the officers were informed by the prosecutor that they could not ask Plaintiff any further questions unless he initiated the discussion.  (Compl. at 45).

improperly charged him with first degree murder when there was "no weapon, no motive, no body, and no witnesses."   (*Id.* at 39).

Plaintiff alleges that Prosecutor Paterson lied to the grand jury to procure an indictment against him on March 26, 2014.   (*Id.*).   Plaintiff alleges that Assistant Prosecutor Henn "approve[d] and collaborate[d]" with Detective Henderson to "wrongfully and falsely charge [Plaintiff] with many false charges that make no sense."   (*Id.* at 52).   Plaintiff alleges that Defendant Henn did this because of a personal vendetta against Plaintiff which arose because he previously prosecuted a domestic violence case against Plaintiff which was dismissed. (*Id.*).

Plaintiff alleges that Union County Police Officer Valentino took the statements of Plaintiff's neighbors when they came to the police station to report that they had seen Ms. Wychoff's lifeless body the night before, but it was no longer there the following morning.   (*Id.* at 63-69).   Plaintiff alleges that the officer violated his rights by not investigating their statements and simply writing up the report.   (*Id.*).

Plaintiff alleges that Defendant Police Officers Donnelly, Ronan, Baird, Mitchell, Florio, Simon, Teleposky and Ford illegally searched his home without a warrant on October 23, 2013. (*Id.* at 80).    Plaintiff also alleges that these individuals falsely arrested him without a warrant on that same date.   (*Id.* at 81).   Plaintiff further alleges that these individuals conspired with the Homicide Task Force and Police Department to undertake these actions.   (*Id.*).

Plaintiff alleges that Defendants Detective Lieutenant Perez and Detective Sichinger authorized the use of "excessive and deadly force" by the Union County Police Department when they came to arrest him.   (*Id.* at 84).   Specifically, a full "SWAT" team entered his house in tactical gear and arrested him without a warrant.   (*Id.* at 84).

Plaintiff is seeking monetary and injunctive relief.   (*Id.* at 135).

4

## II.   DISCUSSION

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.   The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as an indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.   *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility when the plaintiff

---

[3]  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."   *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

### 2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### B. Analysis

At the outset, the Court notes that Plaintiff has alleged conspiracies to violate his constitutional rights amongst almost every combination of defendants. (*See*, *e.g.*, Compl. 11, 13-14, 16, 19, 21). To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal

citations omitted).   To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds."   *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).   The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point."   *Twombly*, 550 U.S. at 557.

Plaintiff has alleged no facts to support a conspiracy claim.   He simply states that different combinations of defendants conspired to deprive him of various constitutional rights.   Such sparse and conclusory allegations are insufficient to state a claim under *Iqbal*.   *See* 556 U.S. at 678. Therefore, all conspiracy claims against all Defendants are dismissed *without prejudice* for failure to state a claim at this time.

The Court also notes that Plaintiff includes a claim for a violation of his Fifth and Fourteenth Amendment due process rights against each defendant, along with the respective more-specific constitutional violation.   However, the due process clause under the Fifth Amendment "only protects against federal governmental action and does not limit the actions of state officials." *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2011) (citing *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (1983) ("the limitations of the fifth amendment restrict only federal government action"); *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (same); *Thomas v. E. Orange Bd. of Educ.*, 998 F.Supp.2d 338, 351 (D.N.J. 2014) ("the Fifth Amendment restricts the actions of federal officials, not state actors .... [a p]laintiff cannot ground her Section 1983 claim in the Fifth Amendment").   With regard to the Fourteenth Amendment, though it is not clear, it appears that the facts supporting said claims are the same as those supporting his more-specific constitutional claims, *i.e.* Fourth Amendment, Sixth Amendment, etc.   As such, these Fourteenth Amendment claims will be dismissed *without prejudice*.   *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) ("[u]nder

[the "more-specific-provision" rule], if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (internal citations omitted).

### 1. Union County Prosecutor's Office Homicide Task Force, Union Township Police Department

It is well established that a prosecutor's office is not a "person" amenable to suit under § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 70–71 (1989) (holding that state is not a "person" within the meaning of Section 1983); *Gordon v. Berkeley Twp. Police*, Civ. No. 10–5061, 2011 WL 2580473, at *4 (D.N.J. June 27, 2011) (holding that a "Prosecutor's Office" is not a "person" within the meaning of a Section 1983 suit) (citations omitted); *Baker v. Lewis*, Civ. No. 10–3438, 2010 WL 4117140, at *1 n. 1 (D.N.J. Oct.19, 2010) (same) (citations omitted); *Martin v. Red Lion Police Dep't*, 146 F. App'x, 558, 562 n. 3 (3d Cir. 2005).   As such, to the extent that the Complaint can be read to include claims against the Prosecutor's Office, those claims are dismissed *with prejudice*.   Similarly, the claims against Union Township Police Department, including the Department's S.W.A.T. team, must also be dismissed *with prejudice*.  *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997)) ("although local governmental units may constitute 'persons' against whom suit may be lodged under § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part").

To the extent the Task Force is not considered part of the Prosecutor's Office, and construing the claims against the police department as claims against the township, the claims against these entities will still be dismissed.   "[A] local government may not be sued under § 1983

8

for an injury inflicted solely by its employees or agents." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658); *see also McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009). Thus, for government entity liability to attach under *Monell*, any injury must be inflicted by "execution of a government's policy or custom." *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (citing *Monell*, 436 U.S. at 694). To satisfy the pleading standard for a *Monell* claim, a claimant "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658 (citations omitted). Here, Plaintiff has not alleged facts about a policy or custom with any specificity and, therefore, any intended claims against the Task Force and Union Township are dismissed *without prejudice*.

### 2. Witness Tampering

Plaintiff alleges that Defendant Jimenez and Defendant Henderson "intimidate[d] and influence[d]" the testimony of Marlo Conkin, one of Plaintiff's neighbors. Plaintiff alleges that this violates his Sixth Amendment right to have "compulsory process for obtaining witnesses in the defendant's favor." (Compl. at 98).

To prevail on a § 1983 claim predicated on the right to a fair trial, the plaintiff must show that the government's alleged pretrial misconduct resulted in an unfair trial. *See Anderson v. Venango Cty., Pa.*, 458 F. App'x 161, 165 (3d Cir. 2012) (citing *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir.1999) ("[T]he withholding or destruction of evidence violates a criminal defendant's constitutional rights only if . . . the criminal defendant is denied a fair trial."); *Hensley*

9

*v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987) (the defendant "could not possibly have been deprived of his right to a fair trial since he was never tried"); *see also Rogala v. Dist. of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir. 1998) (stating that no violation of the Sixth Amendment right to compulsory process occurs when the defendant is not tried)).     The government's violation of "a prophylactic rule" designed to protect the right to fair trial, without a violation of the right to a fair trial itself, does not support a claim under § 1983.   *Hensley*, 818 F.2d at 649.

Here, Plaintiff has not yet been tried.   As a result, he has not yet been denied his right to a fair trial and it is mere speculation on his part as to what testimony Ms. Conklin will give and whether that testimony will be in his favor.   This claim will therefore be dismissed *without prejudice*.

### 3. Illegal Search/Seizure and False Arrest

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV.   "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."   *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).   A seizure occurs when there is either (a) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (b) submission to "a show of authority."   *California v. Hodari D.*, 499 U.S. 621, 626 (1991).   If a suspect in the absence of physical force does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim.   *Id.* at 626–27.   "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."   *Id.* at 628.

A search of a home without a warrant is presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). There are several established exceptions to the warrant requirement, however, including exigent circumstances and consent. *Steagald v. United States*, 451 U.S. 204, 211 (1981). Exigent circumstances exist where "officers reasonably . . . believe that someone is in imminent danger." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (emphasis omitted). For example, a search may be justified based on exigent circumstances by "hot pursuit of a fleeing felon," "imminent destruction of evidence," or "the need to prevent a suspect's escape." *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). Regardless of whether an exception applies, a warrantless search generally must be supported by probable cause. *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985).

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Berg v. Cnty of Allegheny*, 219 F.3d 261, 268–69 (3d Cir. 2000) (collecting cases); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) and *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).

11

Based on the allegations in the Complaint, it appears that Plaintiff is arguing that he was involuntarily taken from his house by Defendants Jimenez, Henderson, Fuentes, Santos, Police Officer Christopher Donnelly; Police Officer Thomas Ronan; Police Officer Christopher Baird; Police Officer Daniel Mitchell; Police Officer Thomas Florio; Police Officer Peter Simon; Police Officer Daniel Teleposky; Police Officer Tim Ford; Union Police Detective Anthony Sickinger; and Union Police Detective Lieutenant Perez, on October 23, 2013, without a warrant.   He was then brought to the police station for questioning, where he remained for 12 hours.   (Compl. at 98).   However, the Complaint also alleges that he was arrested on October 23, 2013.   (*Id.* at 99). It is unclear to the Court precisely when Plaintiff was arrested and whether he was arrested when he was removed from his house.

More importantly, the Complaint also states that neighbors of Plaintiff went to police headquarters on October 23, 2013 to report that the night before, they had seen the "lifeless" body of Ms. Wychoff, with blood covering her face, in the driveway of Plaintiff and Ms. Wychoff's home.   (Compl. at 64).   They further reported that, in the morning, the body was gone and the blood had been washed away.   (*Id.*).   It is not entirely clear from the Complaint whether the report by the neighbors at police headquarters occurred before or after Plaintiff was "seized" and the search of the home ensued.   To the extent that the search and seizure occurred after the report from the neighbors, it would appear that exception to the warrant requirement applied because they had information that Ms. Wychoff was injured and perhaps in danger.   *See Ray v. Twp. of Warren*, 626 F.3d 170, 177 (3d Cir. 2010) (citing *United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006) ("Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others").   It would also appear that the officers had probable cause because: Plaintiff was at the

12

house alone; the body of Ms. Wychoff had been seen bloody and lifeless in the driveway the prior

evening; and the body and blood stains were gone the next morning.   Nevertheless, given the lack

of clarity as to the timeline of the events, the Court will dismiss these claims *without prejudice*.[4]

### 4. Denial of Right to Counsel

Plaintiff alleges that during the "interrogation" at the police station, Defendants Jimenez,

Fuentes, Santos and Peterson "refused to notify" Plaintiff's attorney from a previous matter that

Plaintiff had asked for his assistance.   (Compl. at 100).   Plaintiff states that had Defendants

contacted his attorney as requested, a statement "would have been made."   (*Id.* at 33).   Because

his attorney was not called, Plaintiff alleges that he missed his opportunity to make a statement

and "the entire situation was made worse."   (*Id.*).

Plaintiff alleges that this failure violated his Sixth Amendment right to counsel.   The

Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

---

[4]      Likewise, based on the unclear timeline regarding the report about Ms. Wychoff's body,
the Court will also dismiss Plaintiff's claims that the Defendants used excessive force when they
blocked off his street and used a S.W.A.T. team in full combat gear with assault rifles.   *See Estate
of Smith v. Marasco*, 318 F.3d 497, 515-16 (3d Cir. 2003) ("To state a claim for excessive force
as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure
occurred and that it was unreasonable…The test of reasonableness under the Fourth Amendment
is whether, under the totality of the circumstances, the officers' actions are objectively reasonable
in light of the facts and circumstances confronting them, without regard to their underlying intent
or motivations…Factors to consider in making a determination of reasonableness include the
severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight,
as well as the possibility that the persons subject to the police action are themselves violent or
dangerous, the duration of the action, whether the action takes place in the context of effecting an
arrest, the possibility that the suspect may be armed, and the number of persons with whom the
police officers must contend at one time") (internal citations and quotations omitted).

The question of whether the police were aware of the fact that Ms. Wychoff's body had
been seen bloody and lifeless in the driveway the night before but had since been removed would
certainly be relevant to this analysis.

have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   The Sixth Amendment right to counsel "exists to protect the accused during trial-type confrontations with the prosecutor." *United States v. Gouveia*, 467 U.S. 180, 190 (1984).   The Supreme Court "ha[s] long recognized that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant," *id.* at 187, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," *Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972) (plurality opinion).   The Supreme Court "ha[s] never held that the right to counsel attaches at the time of arrest."   *Gouveia*, 467 U.S. at 190.  "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel."   *Davis v. United States*, 512 U.S. 452, 457 (1994); *James v. York Cty. Police Dep't*, 160 F. App'x 126, 132 (3d Cir. 2005).   Here, as stated above, the exact timeline of Plaintiff's criminal proceedings is unclear.   Though it does not seem that "adversary judicial proceedings" had been initiated at that juncture, thereby rendering the Sixth Amendment inapplicable, the Court cannot definitely determine that is correct. As such, this claim will be dismissed *without prejudice* under *Iqbal*.

To the extent Plaintiff is alleging that this refusal somehow violated his Fifth Amendment right against compelled self-incrimination, the Court notes that the failure of a government agent to provide a lawyer during interrogation once one is requested, does not, in and of itself, give rise to a claim under 42 U.S.C. § 1983.   *See Ojo v. Luong*, No. 14-4347, 2015 WL 1808514, at *5 (D.N.J. Apr. 21, 2015) (citing *Chavez v. Martinez*, 538 U.S. 760, 773 (2003); *see Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) ("violations of the prophylactic *Miranda* procedures do not amount to violations of the constitution itself . . . the 'right to counsel' during custodial interrogation recognized in *Miranda* . . . is merely a procedural safeguard, and not a substantive right"); *see also Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (upholding *Giuffre*).   A *Miranda*

14

claim only becomes actionable under § 1983 when a statement elicited in the absence of those warnings is used at Plaintiff's criminal trial. *Chavez*, 538 U.S. at 773; *see also Large v. Cty. Of Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009).   Here, it does not appear that Plaintiff even made a statement, and certainly no statement has yet been introduced at trial.   (Compl. at 33).   Therefore, this claim will be dismissed *without prejudice*.   *Large*, 307 F. App'x at 607; *Renda* 347 F.3d at 559; *Ojo*, 2015 WL 1808514, at *5.

### 5. Grand Jury Testimony

Plaintiff alleges that Defendant Henderson gave untruthful testimony to the grand jury on March 26, 2014.   (Compl. at 103).   However, the Supreme Court has unanimously held that grand jury witnesses, like trial witnesses, have "absolute immunity from any § 1983 claim based on the witness testimony."   *Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012); *see also Peteete v. Asbury Park Police Dep't*, 477 F. App'x 887, 889–90 (3d Cir. 2012).   The Supreme Court noted that "[d]espite the broad terms of § 1983, this Court has long recognized that the statute was not meant to effect a radical departure from ordinary tort law and the common-law immunities applicable in tort suits."   *Rehberg*, 132 S.Ct. at 1502.   "Immunities well grounded in history and reason, were not somehow eliminated by covert inclusion in the general language of § 1983."   *Id.* (internal citations and quotations omitted).   Defendant Henderson is therefore entitled to absolute immunity for his testimony before the grand jury, and this claim must be dismissed *with prejudice*.

### 6. Prosecutorial Misconduct

Plaintiff alleges that Defendant Peterson "perjured himself" and lied to the grand jury on March 26, 2014.   (Compl. at 116).   Specifically, Plaintiff argues that Defendant Peterson inaccurately described various pieces of evidence to the grand jury which were unfavorable to Plaintiff.   (*Id.*).

15

Defendant Peterson has absolute prosecutorial immunity for these actions because the alleged constitutional violations involve the prosecutor's presentation of evidence to the grand jury and failure to present exonerating evidence to the grand jury, conduct which is immune from suit for damages.   *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1970) ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"); *Michaels v. New Jersey*, 222 F.3d 118, 121-22 (3d Cir. 2000) (quoting *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) ("Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs"); *Moore v. Middlesex Cnty. Prosecutors Office*, 503 F. App'x 108, 109-10 (3d Cir. 2012) (per curiam) (dismissal of complaint with prejudice based on absolute prosecutorial immunity was proper).   As such, this claim against Defendant Peterson will be dismissed *with prejudice*.

### 7. Failure to Investigate

Plaintiff alleges that Police Officer Salvatore Valentino failed to conduct any investigation when Plaintiff's neighbors came to the police station to report that they had seen Ms. Wychoff's body in the driveway, but instead "went right to murder."   (Compl. at 122).   However, police do not have a constitutional duty to investigate a defendant's protestations of innocence or to search for evidence of affirmative defenses prior to making an arrest.   *See*, *e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (stating police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed").   Because Officer Valentino was under no constitutional duty to investigate any affirmative defenses for Plaintiff before an arrest, this claim will be dismissed *without prejudice*.

16

## III.   CONCLUSION

For the foregoing reasons, Union County Prosecutor's Office and Union Township Police Department will be dismissed *with prejudice* pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted.   The claim against Defendant Henderson for his testimony to the grand jury, and against Defendant Peterson for his presentation of the case to the grand jury, will also be dismissed *with prejudice*.   All other claims will be dismissed *without prejudice*.[5]   Because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[6]   An appropriate Order follows.

*s/ Esther Salas*

**Esther Salas, U.S.D.J.**

---

[5] To the extent the Complaint raises claims under New Jersey state law, the Court declines to exercise supplemental jurisdiction.   *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claim's over which it has original jurisdiction).

[6] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008).   To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*   If he submits an amended complaint, Plaintiff is also reminded of the dictates of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim."   FED. R. CIV. P. 8(a) (emphasis added).